BURKE v. MULGREW et al.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

1. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATE—MEDICAL SERVICES—ACTIONS—EVIDENCE—SUFFICIENCY.

Evidence in an action against a decedent's estate for medical services *held* insufficient to show that decedent agreed to compensate plaintiff for loss of business through absence from his office, in addition to compensation for services rendered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 1873.]

2. PHYSICIANS AND SURGEONS—COMPENSATION—AMOUNT—EVIDENCE.

A contract for a physician's services should not be construed to give him compensation for loss of business while away from his office, in addition to compensation for the services, unless the language employed is susceptible of no other construction, and testimony that a promise for such double compensation was made must be well supported by facts and circumstances to sustain a recovery.

3. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATE—MEDICAL SERVICES—ACTIONS—EVIDENCE—ADMISSIBILITY.

In an action against a decedent's estate for medical services rendered by his son-in-law, the estate could show that plaintiff and his family frequently visited decedent's home and accepted his hospitality during part of the time for which plaintiff charged for his services, as tending to show that the calls for which plaintiff charged were materially prolonged by visiting, for which decedent was not properly chargeable.

4. SAME.

In an action against decedent's estate for medical services, plaintiff could show his annual income before rendering the services as tending to show the value of his time, to be considered by the jury in estimating the compensation to be made for his services and time when absent from the city in caring for decedent; but he could not show a falling off of receipts from his practice while rendering the services, since that may have been due to other causes.

5. EVIDENCE—EXPERT TESTIMONY—HYPOTHETICAL QUESTIONS.

In an action for medical services to a decedent, expert witnesses were improperly allowed to answer hypothetical questions not based on the services rendered or on the fact that plaintiff properly prescribed for and administered to decedent, but on decedent's declarations concerning the same, indicating that he was satisfied with the treatment and that but for it he would have probably died.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§. 2371, 2373.]

6. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATE—MEDICAL SERVICES—QUESTIONS FOR JURY—EVIDENCE—SUFFICIENCY.

Evidence in an action for medical services to a decedent *held* sufficient to entitle plaintiff to go to the jury upon his claim that he properly prescribed for and administered to decedent.

7. EVIDENCE—EXPERT TESTIMONY—HYPOTHETICAL QUESTIONS.

In an action for medical services, hypothetical questions respecting the value of the services might properly have contained a statement that plaintiff properly prescribed for and administered to the patient, on the assumption that the jury would so find, the value of the evidence. to depend on whether the jury so found.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2371.]

Appeal from Trial Term.

Action by Richard F. Burke against George B. Mulgrew and others, executors of Felix A. Mulgrew. From a judgment for plaintiff, and from an order refusing a new trial, defendants appeal. Reversed, and new trial granted.

Argued before. INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

John J. Delany, for appellants.

John F. McIntyre (David C. Hirsch, on the brief), for respondent.

LAUGHLIN, J. This is an action by a physician against the estate of his father-in-law, to recover the sum of $9,655 for professional services alleged to have been rendered in attending and treating the decedent professionally from the 10th day of February, 1903, to the 20th day of March, 1905; the decedent's wife from the 1st day of September, 1903, to the 20th day of April, 1905; the decedent's son Felix, from the 26th day of September to the 1st day of October, 1903; the decedent's son Henry from the 17th day of May, 1903, to the 9th day of March, 1905; and to recover in addition the sum of $200 per month for the period of 20 months for damages alleged to have been sustained by plaintiff through his absence from his office in attendance upon the decedent and the members of his family. It is alleged in the complaint that the professional services were rendered at the special instance and request of the decedent, and that he not only promised to pay the reasonable value thereof, but promised, also, "in consideration of the continuous attendance required, to compensate plaintiff for such damage as plaintiff might suffer in his business and practice."

Upon the trial evidence was received, over objection and exception duly taken by counsel for the defendants, tending to show, in addition to the professional services rendered and the value thereof, that decedent promised to pay plaintiff for his loss of business sustained on

account of such attendance, and such loss was shown by the difference between the plaintiff's annual income from his business prior to and during the period in question. The court submitted the case to the jury on all of this evidence, and drew attention to the plaintiff's claim for $4,000 on account of loss of business. The jury rendered a verdict in favor of the plaintiff for the sum of $8,812, which is $843 less than plaintiff demanded as the value of the professional services rendered. There is no special finding, however, and it is therefore impossible to say from the record how the verdict was made up. It may be that the jury allowed the entire claim for loss of business, and that the balance of the verdict represents their estimate of the value of the services.

Plaintiff claimed, and the case was submitted to the jury upon the theory, that if they believed the testimony of this witness he was entitled to compensation for the loss sustained through absence from his office in addition to compensation for the services rendered. This, we think, was not warranted by the evidence. A contract to pay more than the actual value of the services rendered is quite unusual. Testimony, however, that the services of a particular physician were desired at such place and under such circumstances that compensation for the services would not be adequate remuneration for the loss of time or business would tend to render probable testimony that an agreement was made to compensate the physician for both services and necessary loss of time or business; but such testimony should not be construed as contemplating compensation for the full time or loss of business and for the services as well, for the former would embrace the latter. A construction which would give the physician double compensation should not be given to the contract, unless the language employed is susceptible of no other construction, and in that event the extraordinary character of the promise would render the testimony improbable, and require that it be well supported by facts and circumstances to sustain a recovery thereon.

The only evidence offered by the plaintiff to establish a special contract on the part of the decedent to pay for his loss of business was the testimony of the decedent's son James, who contested his father's will on the ground that the other children had exercised undue influence over the testator. He testified, so far as material on this point, that just preceding the 10th day of February, 1903, he heard a conversation between his father and plaintiff, in which the former asked the latter to take care of all of the members of the family that were sick at that time and said "he would pay him well for his services— he would pay him as well as any physician that he could get in New York"; that plaintiff made answer "that he would take charge of the family, that he would give his undivided attention to them, more so than he would to any other member of his own family"; that the witness asked his father "who was going to pay the doctor for all these services and loss of business," to which his father replied, "I will; that is my affair." On the 5th day of March, 1903, plaintiff accompanied the decedent on a trip to Cuba, and they returned on the 3d day of April, thereafter. The decedent's son further testified that shortly prior to the 5th day of March, 1903, his father informed

him of his intention to have the plaintiff accompany him to Cuba, whereupon the witness said, "That is taking the doctor away from a lot of his business, if you would require him to go with you for a month or two to Cuba," to which his father replied:

"Never you mind about that. I will pay the doctor all that it is worth, and pay him well as any professional man in New York. My life and my health is worth more than anything that I can value."

Witness then said to his father that it would be a big loss to the plaintiff, to which his father replied that:

"He would make up the loss to the doctor, and would pay him liberally for the trip that he would take with him to Cuba; that he was a sick man, and he wanted him by his side, because he had confidence in him and knew him better than any other physician, because he has always been his family physician."

It will be observed that these suggestions with respect to payment for the loss of business emanated from the witness, and that the discussions were not in the presence of the plaintiff, so that it was no proof of an agreement on the part of the decedent with the plaintiff, which was essential to a recovery for this item of damages.

On the 20th day of February, 1905, the decedent went to Summerville, N. C., and shortly thereafter summoned the plaintiff, who went to Summerville and treated him professionally; both returning on the 26th day of the same month. The decedent's son further testified that about two days after their return he had another conversation with his father in the presence and hearing of the plaintiff, and in which plaintiff participated; that plaintiff said, "I will have to go to my office to attend to my business," whereupon decedent said:

"Why do you want to go away? Why don't you stay here? We ought to have first call on your services. You are our physician. I want you to remain with me and all the family that is sick. I will pay you liberally for it, and you need not worry on that score."

The witness, after repeatedly stating that this was all of the conversation he recollected, then added, apparently in answer to leading questions, that the decedent said he would give all that he possessed if plaintiff "would only pull him through and get him well again, and also my mother; that he would give one-half of his fortune"; that his father said:

"If I can sit in a corner and look around, if you will get me in that condition, Doctor, I will never forget you and pay you well for it."

The witness thereupon again said that he had stated all that he remembered of the conversation and had exhausted his memory and recollection concerning it. He was then asked whether anything was said "about loss of practice," to which he replied in the affirmative, saying that his father said:

"That any loss of practice that he would sustain in attending to them that he would pay him for it, and pay him liberally. He said that the doctor was always his physician, and that he knew him better than any one else, and that he would pay him just as much as any first-class specialist in New York, reiterating what he has said a number of times before."

On cross-examination this witness materially changed his testimony. His direct examination was in the morning, and his cross-

examination in the afternoon. In the morning he testified that his father, in speaking of the plaintiff, said that he had helped him more than anybody else, "that he was going to other physicians, and that he paid them a great deal of money, but they had never done him as much good as the doctor." In the afternoon he denied that his father said in that conversation that he had paid a great deal of money to other doctors, and, on being asked again if he did not so testify in the morning, he answered, "No sir; I never said that, positively." He also testified on cross-examination that part of the conversation, which on direct examination he placed shortly before February 10, 1903, occurred in September, 1903, and he added that he recalled something that he had not stated, which was that his father "wanted the doctor to give his undivided attention to him; that he would repay him fully for his services; said he wanted him to attend to all the members of the family sick at that time"; and, after saying that this was all that he remembered of the conversation, he added that his father "said that he would—that Dr Burke was his family physician, and that he would repay him for all his services and loss of time."

Upon this evidence the plaintiff was permitted to show that his annual income prior to the 10th day of February, 1903, when his employment by the decedent commenced, was $18,000 per annum, or at the rate of $50 per day, and that his receipts from February 10, 1903, to April 21, 1905, when the decedent's widow died, were about $5,000. The jury were thus permitted to compensate plaintiff for the loss of his business occasioned by his attendance on the decedent and the members of his family, as well as for the reasonable value of the services rendered. With the exception of the month in Cuba and the few days at Summerville, N. C., the services rendered by the plaintiff to the decedent and his family were rendered in, or in the vicinity of, New York. At times the plaintiff's visits were short, and at times he remained hours, and at times he remained all night. It is probable, however, that on account of the family relations the length of these visits was prolonged far beyond any necessity for medical attendance upon the decedent or the members of his family.

The court erroneously excluded evidence offered by the defendants tending to elucidate this point and designed to show that the family relations were such that plaintiff and his family frequently visited at the residence of the decedent and accepted his hospitality during part of the time for which plaintiff charged for his services. This evidence was competent, as tending to show that the calls for which the plaintiff was charging were materially prolonged by visiting, for which the decedent was not properly chargeable, and that there was an overcharge for time.

The evidence with respect to plaintiff's annual income prior to the 10th day of February, 1903, was doubtless proper as tending to show the value of his time, which might be considered by the jury in estimating the compensation to be made for his services and time when absent from the city, particularly on the journey to Cuba; but on no theory of the case do we think the evidence admissible of the

plaintiff's receipts from his practice during the period of the rendition of these services, showing a falling off in business which may have been due to other causes.

The testimony of the decedent's son, the material part of which has been stated, is insufficient to warrant a recovery for plaintiff's loss of profits with respect to his profession. Assuming that the conversations between the decedent and plaintiff, testified to by the decedent's son, occurred, viewed in the most favorable light to the plaintiff, they only establish a contract to compensate him for the professional services rendered, as if rendered at a place where he could, in connection therewith, attend to his other practice, and in addition to that for the value of the extra time taken from his practice in keeping him therefrom longer than was necessary for the professional visits, and in accompanying him to Cuba, and going to North Carolina to attend him; or, in other words, he was entitled to be compensated for all the time occupied in attendance upon the decedent and members of his family at decedent's request, as if such time were necessarily required for professional attendance thereon, and for the fair value of his time and services thus combined. The evidence should not be given a construction which would authorize plaintiff to recover double compensation, which is .the theory upon which the case was tried. Doubtless plaintiff has a meritorious claim for the value of his time and services, but it is unreasonable to suppose, even assuming the testimony of the decedent's son to be true, that decedent intended to pay the plaintiff, not only the value of the services which he rendered, but in addition to reimburse him for the difference between his professional income prior to his employment by the decedent and during such employment, and plaintiff was not warranted in so inferring.

The court also erred in receiving testimony of experts in answer to hypothetical questions, which were improperly framed, and instead of reciting the services rendered, or the fact that the plaintiff properly prescribed for and administered to the decedent during the time specified, recited the decedent's declarations concerning the same, indicating that he was satisfied with the treatment and that but for it he would probably have died. The plaintiff being an incompetent witness on account of the death of the patient, there is difficulty, of course, in showing the services actually rendered while traveling; but on the admissions and declarations made by the decedent with respect thereto the plaintiff would be entitled to go to the jury upon the claim that he had properly prescribed for and administered to the decedent during the periods in question, and to ask them to so find. The hypothetical questions might properly have contained a statement to that effect, on the assumption that the jury would so find; the value of the evidence to depend on whether the jury so found. It is unnecessary to analyze these questions, or to more than make a general reference to them; for upon the new trial, rendered necessary, they may be avoided.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.